UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONIQUE MANFREDI,<br><br>               Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>               Defendant. | Case No. 1:20-cv-01370-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 17). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 24).

Plaintiff presents the following issue for decision: Whether the ALJ erred by rejecting the opinions from Dr. Michiel, Dr. Morgan, and Dr. Shetty without proper evaluation. (ECF No. 17, p. 1).

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

1    I.       **ANALYSIS**

2             A.       **Standards of Review**

3             As an initial matter, the parties dispute the standards by which this Court must review the

4    ALJ's decision. The parties agree that this claim is governed by the agency's "new" regulations

5    concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.

6    20 C.F.R. §§ 404.1520c, 416.920c; (ECF No. 17, p. 13; ECF No. 18, p. 9). The regulations set

7    "supportability" and "consistency" as "the most important factors" when determining the

8    opinions' persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the

9    regulations eliminate the "physician hierarchy," deference to specific medical opinions, and

10   assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered

11   the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20

12   C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b). Moreover, "[r]egardless of the change to the

13   regulations, an ALJ's reasoning must be supported by substantial evidence and free from legal

14   error." *Kimberly B. v. Comm'r of Soc. Sec.*, No. 3:19-CV-06210-TLF, 2021 WL 973849, at *2

15   (W.D. Wash. Mar. 16, 2021). Substantial evidence means "more than a mere scintilla,"

16   *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v.*

17   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a

18   reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

19            The regulations provide other factors and subfactors beyond supportability and

20   consistency. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). One of these factors is the

21   relationship of the medical source with the claimant, with subfactors including the length of the

22   treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of

23   the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3),

24   416.920c(c)(3). However, the relationship-with-the-claimant factors and subfactors are only

25   considered when the ALJ "find[s] that two or more medical opinions or prior administrative

26   medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this

27   section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the

28   same." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Case authority preceding the new regulations requires an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (internal citations omitted)) ("To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."). Plaintiff cites to case law supporting the proposition that these standards still guide this Court's review of an ALJ's decision, while Defendant cites to case law concluding that the standards have been supplanted by the new regulations. (ECF No. 17, p. 13; ECF No. 18, p. 10).

The Ninth Circuit has not yet addressed the impact of the new regulations on the requirement that the ALJ provide "clear and convincing" reasons for rejecting an uncontradicted physician's opinion and "specific and legitimate reasons" for rejecting a contradicted physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). However, several district courts have given the opinion that these standards still apply. *See, e.g., Stephanie B. v. Commissioner of Social Security* (W.D. Wash., Jan. 7, 2022, No. 2:21-CV-462-DWC) 2022 WL 72062, at *2–3 ("Thus, while the new regulations ask the ALJ to explain, at a minimum, how the ALJ considered the supportability and consistency factors of a medical opinion, if the medical opinion is uncontradicted the ALJ must still cite 'clear and convincing' reasons for rejecting it, and if it is contradicted, the ALJ must still give 'specific and legitimate' reasons for rejecting it."); *see also Thompson v. Comm'r of Soc. Sec.*, No. 2:20-CV-3-KJN, 2021 WL 1907488, at *3 n.3 (E.D. Cal. May 12, 2021) (noting "it is not yet clear how much the new regulations affect other Ninth Circuit principles governing Social Security review" but concluding that, "[i]n the absence of binding interpretation by the Ninth Circuit, the court joins other district courts in concluding that longstanding general principles of judicial review— especially those rooted in the text of the Social Security Act—still apply to cases filed on or after March 27, 2017"); *Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461 RSM, 2020 WL 6581012 at

*3 (W.D. Wash. Nov. 10, 2020) (finding that the new regulations do not clearly supersede the "specific and legitimate" standard because the "specific and legitimate" standard refers not to how an ALJ should weigh or evaluate opinions, but rather the standard by which the Court evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence); *Morgan v. Saul,* 2020 WL 11723490, at *5 (C.D. Cal., Oct. 21, 2020) ("[T]he ALJ was obliged under both existing case law and the new regulations to explain, at a minimum, with specific and legitimate reasons, his conclusion that Dr. DePriest's opinion was not supported by the objective medical evidence").

The Court agrees that these articulation standards still apply, keeping in mind that the new regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. Also, as noted above, the new regulations still require the ALJ to articulate their consideration of and the persuasiveness of the medical opinions at issue. 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

**B.      Dr. Michiel**

Turning to the merits, Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of Dr. Michiel, who performed a consultative psychiatric examination of Plaintiff. (ECF No. 17, p. 14). As the ALJ concluded that Dr. Michiel's opinion was contradicted by other doctors' opinions, the Court considers whether the ALJ provided specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Michiel's opinion. *See Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014) (noting that specific-and-legitimate-reasons standard governs review of ALJ's reasons for rejecting contradicted examining doctor's opinion). In determining whether the reasons were sufficiently specific and legitimate, the Court focuses on the factors of supportability and consistency set forth in 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Here, the ALJ provided the following reasons for discounting Dr. Michiel's opinion:

In May of 2018, Ekram Michiel, M.D., performed a consultative psychiatric examination of the claimant. Ex. 4F. Doctor Michiel concluded the claimant was unable to maintain attention and concentration to carry out simple job instructions. Ex. 4F at 4. The opinion of Dr. Michiel was not persuasive as inconsistent with his

> own examination which showed that the claimant was able to perform basic tests
> of concentration, focus, and memory with some errors; the doctor failed to perform
> more detailed testing. Ex. 4F at 3. The opinion was inconsistent with the opinion
> of the doctor who performed detailed testing and felt the claimant capable of
> simple tasks. Ex. 12F at 6. The opinion was also not consistent with the opinions
> of doctors who reviewed the claimant's medical records. Ex. 1A at 10; 3A at 15.

(A.R. 26).

The ALJ's first reason for discounting Dr. Michiel's opinion is that it was inconsistent with his examination that showed that Plaintiff was able to perform basic tests of concentration, focus, and memory with some errors and he failed to perform more detailed testing. However, this reasoning fails to explain how Dr. Michiel's opinion is unsupported or inconsistent with the medical record. During her examination with Dr. Michiel, Plaintiff performed some tasks without error, such as "simple math calculations," and "was able to do digit span four out of five forward and two backwards correctly." (A.R. 373). However, Plaintiff only recalled one out of three items after five minutes. (A.R. 373). Additionally, Plaintiff incorrectly identified the current president, at the time of the exam in May of 2018, as "'Obama' and could not name the former president." (A.R. 373). Plaintiff also appeared "unkempt, uncombed, casually dressed with inadequate personal hygiene," and her "[s]peech showed an impediment." (A.R. 373). These results and observations are generally consistent with Dr. Michel's conclusions.

The record also contains treatment notes that support Dr. Michiel's opinion that Plaintiff's mental health symptoms affected her ability to function. (*See*, *e.g.*, A.R. 624, 635, 641 (each record noting that Plaintiff was following up for mental health treatment for a "continuation of initial symptoms" with Plaintiff "report[ing] functioning as very difficult" and reporting in review of psychological symptoms: "anxiety, difficulty concentrating, excessive worry, fearfulness, feeling down, depressed or hopeless (more than half the days), feelings of guilt, fidgeting/squirming, little interest or pleasure in doing things (more than half the days), nervousness, obsessiveness")) (alterations to capitalization).

The next reason the ALJ identified to discount Dr. Michiel's opinion is that it was inconsistent with other doctors' opinions. Specifically, the ALJ stated that one doctor, Dr.

1  Swanson, "performed detailed testing and felt the claimant capable of simple tasks." (A.R. 26).

2  As to Dr. Swanson's opinion, the ALJ assessed it as follows:

3      [T]he claimant underwent a more thorough examination, and testing, by Steven
    Swanson, Ph.D. Ex. 12F. Doctor Swanson concluded the claimant would be

4      limited to simple tasks. Ex.12F at 6, 7. The undersigned found this persuasive but
    adjusted the residual functional capacity to accommodate the limitations suggested

5      by a broader review of the record, including social and adaptive limitations.

6  (A.R. 26).

7      However, the ALJ did not compare Dr. Swanson's opinions with any of the testing

8  performed by Dr. Swanson or explain why those tests were more consistent with Dr. Swanson's

9  opinion than Dr. Michiel's. A review of the testing results done by Dr. Swanson show that

10  Plaintiff performed relatively poorly on all tests administered. Dr. Swanson performed a

11  Wechsler Adult Intelligence test, which placed Plaintiff in the 10th percentile.  (A.R. 749). In the

12  WMS-IV test for "assessing major dimensions of memory in adolescents and adults," Plaintiff

13  scored in the 19th and 14th percentiles for immediate and delayed memory. (A.R. 750). In the

14  Wide Range Achievement tests, Plaintiff performed in the 3rd percentile (math computation), 5th

15  percentile (word reading and reading composite), 6th percentile (sentence comprehension), and

16  12th percentile (spelling). (A.R. 750). These tests put her in the grade equivalents of between the

17  fourth and seventh grades, as a 45-year-old adult. Although Dr. Swanson did not find any

18  material impairments, his conclusion explain how that opinion was based on any of the results

19  from testing. (A.R. 751).

20      Given the ALJ's failure to explain how Dr. Swanson's opinion was supported by and

21  consistent with the test results, the mere fact that Dr. Swanson performed a more thorough

22  examination is not itself a legitimate reason to discount Dr. Michiel's opinion. Again, it appears

23  that Plaintiff performed relatively poorly, below 20th percentile, on all tests where the percentile

24  was reported. These test results appear more consistent with Dr. Michiel's opinions, and rather

25  than Dr. Swanson's.

26      For the above reasons, the Court concludes that the ALJ failed to give specific and

27  legitimate reasons, supported by substantial evidence, concerning the supportability and

28

1   consistency factors set forth in 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) to discount Dr.

2   Michiel's opinion.

3       **C.     Dr. Morgan**

4       Plaintiff next argues that the ALJ failed to provide specific and legitimate reasons for

5   rejecting the opinion of Dr. Morgan, who provided mental health treatment to Plaintiff. (ECF No.

6   17, p. 15). Here, the ALJ provided the following reasons for discounting Dr. Morgan's opinion:

> In September of 2019, Sarah Morgan M.D., completed a form assessment
> indicating the claimant was unable to sustain competitive employment, had almost
> no adaptive function, would be chronically off task and absent, and had moderate
> to severe impairments to her ability to function socially and to perform detailed
> tasks. Ex. 14F. This form opinion was not persuasive. The suggestion that the
> claimant is unable to work is one requiring a legal conclusion reserved for the
> Commissioner. 20 CFR 416.920b(c)(3). There is no citation to objective testing
> that would support the claims of impairment and the degree of impairment is not
> consistent with the opinion of the examiner who did perform objective testing. Ex.
> 12F at 6, 7.

(A.R. 27).

    The first reason identified by the ALJ to discount Dr. Morgan's opinion is that the

determination of whether Plaintiff was able to work was reserved for the Commissioner. While

the disability determination is reserved for the Commissioner, Dr. Morgan's opinion also

rendered medical opinions as to Plaintiff's impairments and symptoms. The ALJ was not free to

disregard Dr. Morgan's medical opinion on Plaintiff's impairments and symptoms simply

because she additionally rendered an opinion on an issue reserved to the Commissioner. *See*

*McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (noting than "[a]n impairment is a purely

medical condition" but "[a] disability is an administrative determination").

    The ALJ also stated that "[t]here is no citation to objective testing that would support the

claims of impairment and the degree of impairment is not consistent with the opinion of the

examiner who did perform objective testing."  (A.R. 27). However, the ALJ does not refer to any

records or test results in making this conclusion. As discussed above, Dr. Swanson's tests showed

consistently poor performance by Plaintiff and Dr. Swanson also did not cite to any objective

testing that would support his opinion either. Dr. Morgan's medical statement cited to the

1   "History & Medical File," which was one of the options on the form. (A.R. 778). Those medical

2   records are extensive and not evaluated by the ALJ for their consistency or level of support for

3   Dr. Morgan's opinion. In those records, Plaintiff repeatedly reports impairments such as

4   "functioning as somewhat difficult. The patient presents with anxious/fearful thoughts, difficulty

5   concentrating, difficulty falling asleep, diminished interest or pleasure, excessive worry, fatigue,

6   feelings of guilt, loss of appetite and restlessness but denies thoughts of death or suicide." (A.R.

7   641). Other observations are consistent with Dr. Morgan's limitations: such as "Mood: Depressed

8   Anxious, Affect: Other: tearful," (A.R. 642).  Dr. Morgan also administered a patient health

9   questionnaire, which revealed a "[s]creening total score [of] 17," for "[m]oderately severe

10  depression." (A.R. 656). These records appear to support Dr. Morgan's opinions.

11       It is also worth noting that in Dr. Damiana's physical examination, which the ALJ relied

12  on elsewhere in the opinion (A.R. 27) noted that Plaintiff was "anxious and crying," during the

13  examination. (A.R. 378).

14       Lastly, the ALJ failed to consider that Dr. Morgan's opinion was consistent with Dr.

15  Michiel's opinion, discussed above.

16       For the above reasons, the Court concludes that the ALJ failed to give specific and

17  legitimate reasons, supported by substantial evidence, concerning the supportability and

18  consistency factors set forth in 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) to discount Dr.

19  Morgan's opinion.

20       **D.     Dr. Shetty**

21       Lastly, Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for

22  rejecting the opinion of Dr. Shetty, who is Plaintiff's primary care provider. (ECF No. 17, p. 16).

23  Here, the ALJ provided the following reasons for discounting Dr. Shetty's opinion:

24       In January of 2020, Nikita Shetty, M.D., completed a form assessment indicating
         the claimant could not sit or stand or walk for more than 5 minutes, could lift
25       nothing, would be constantly interrupted by symptoms, could perform no postural
         activities, could tolerate no environmental conditions, and could not work. Ex.
26       19F. The doctor's extreme limitations are not persuasive; they are not supported by
         the evidence and they are inconsistent with the evidence. The claimant had full
27       grip strength and a normal, painless range of motion in the upper and lower

28

8

1
2
3
4

> extremities, in April of 2019. Ex. 23F at 10. In September of 2019, the claimant had tenderness and decreased ranges of motion in her neck and back, but intact sensation, full muscle strength, and could ambulate without an assistive device. Ex. 18F at 9. The opinion is not consistent with the opinion of a physician who examined the claimant in May of 2018, and there is no explanation or reference to some acute calamity which would explain the difference in function between the two opinions. Ex. 5F at 5, 6.

5

(A.R. 27).

6
7
8
9
10
11
12
13
14
15
16
17
18

The ALJ first concluded that Dr. Shetty's opinion was not supported by the evidence and was inconsistent with medical records from April and September 2019 indicating some normal findings. Upon review, the April 2019 and September 2019 records reflect strength levels and degrees of normal movement that could reasonably appear inconsistent with the physical limitations assessed by Dr. Shetty, *e.g.*, the opinion that Plaintiff could lift nothing. (*See* A.R. 1078 (noting 5/5 muscle strength and painless range of motion); A.R. 1196 (noting 5/5 grip strength and no abnormal movements)). Similarly, the ALJ also reasonably concluded that Dr. Shetty's opinion was inconsistent with a physical consultative examination by Dr. Damania, who opined, among other things, that Plaintiff had no lifting restrictions and could stand and walk for six to eight hours. (A.R. 380) (noting 5/5 motor strength and that Plaintiff had good active range of motion). Moreover, there was no explanation in the record for the difference in the extreme limitations offered by Dr. Shetty, *e.g.*, that Plaintiff could not sit or stand or walk for more than five minutes and could lift nothing.

19
20
21

Accordingly, the Court concludes that the ALJ offered specific and legitimate reasons, supported by substantial evidence, concerning the supportability and consistency factors set forth in 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) to discount Dr. Shetty's opinion.

22

**E.     Remand**

23
24
25
26

Plaintiff concludes by stating that this case should remanded for further proceedings and does not request an award of benefits. (ECF No. 17, p. 18). Defendant argues that, if this Court overturns the ALJ's decision, the proper remedy is a remand for further administrative proceedings. (ECF No. 18, pp. 16-17).

27
28

The decision whether to remand for further proceedings or for immediate payment of

benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.

2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test,

with each of the following parts of the test needing to be satisfied to remand for benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020. However, even if all these parts are met, the Court may still remand

when "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact,

disabled." *Id.* at 1021. Notably, remand for further proceedings is the "ordinary" requirement

whereas a remand for payment of benefits is the rare exception. *See Treichler v. Comm'r of Soc.

Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

Here, after review of the record as whole, and given that Plaintiff does not ask for a

remand for payment of benefits, the Court concludes that a remand for further proceedings is

appropriate.

## II.   CONCLUSION AND ORDER

Accordingly, the decision of the Commissioner of the Social Security Administration is

REVERSED and REMANDED for further administrative proceedings consistent with this

decision. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant.

IT IS SO ORDERED.

Dated:   **March 24, 2022**          /s/ *Erica P. Grosjean*
_____
UNITED STATES MAGISTRATE JUDGE